UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 2:25-cv-11205
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

______________________________/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), and REMAND THIS MATTER TO THE COMISSIONER FOR ACTION CONSISTENT WITH THIS DECISION**

**I. RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF No. 14), and **REMAND** this matter to the Commissioner for action consistent with this decision.

## II. REPORT

### A. Background

In July 2022, Andrew W. (AW) filed an application for Title II Disability Insurance Benefits (DIB), alleging disability since December 1, 2020, when AW

was 32 years old, *i.e.*, a "younger person," 20 C.F.R. §§ 404.1563(c), 416.963(c). (ECF No. 10-1, PageID.287-293.)[1] At the same time, he filed an application for Title XVI Supplemental Security Income (SSI). (*Id*., PageID.279-286.) AW's disability report lists the following conditions as limiting his ability to work: scoliosis, pinched iotic [sic] nerve, [Crohn's disease], ADHD, bipolar disorder, [kidney] disease, radiculopathy on neck, kyphosis, ulcerative colitis, and depression. (*Id*., PageID.340.) Plaintiff's applications were denied initially on May 12, 2023 and on reconsideration on September 14, 2023. (*Id*., PageID.105-156, 162-194.)

Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (*Id*., PageID.195-196.) ALJ Therese Tobin held a hearing on April 9, 2024, at which Plaintiff, his attorney, and a vocational expert appeared. (*Id*., PageID.79-104.) On May 20, 2024, ALJ Tobin issued an unfavorable decision. (*Id*., PageID.56-78.) Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

[1] It appears Plaintiff previously filed for social security disability benefits on July 29, 2020, but he received a decision on October 28, 2020. (ECF No. 10-1, PageID.106, 118, 132, 144.)

("SGA") since December 1, 2020, the alleged onset date ("AOD"). (*Id*., PageID.61-62.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, other disorders of the nervous system, personality disorders, ulcerative colitis, chronic kidney disease, depression, attention deficit hyperactivity disorder (ADHD), obesity, and carpal tunnel syndrome (CTS). (*Id*., PageID.62.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*., PageID.62-65.) Between **Step 3** and **Step 4**, the ALJ found that Plaintiff had the residual functional capacity (RFC):

> . . . to perform light work [*i.e., exertional limitations*] . . . except [he] can frequently climb ramps and stairs, but [he] can occasionally climb ladders, ropes, and scaffolds. [He] can frequently balance, stoop, kneel, and couch, but only occasionally crawl [*i.e., postural limitations*]. [He] can never be exposed to unprotected heights and dangerous machinery [*i.e., environmental limitations*]. [He] is limited to perform[ing] simple routine tasks [*i.e., sustained concentration and persistence limitations*]. [He] can occasionally have contact with supervisors, coworkers, and public [*i.e., social interaction limitations*].

(*Id*., PageID.65-70.)[2] At **Step 4**, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id*., PageID.70.) At **Step 5**, the ALJ found that,

[2] The ALJ repeatedly referred to Plaintiff as "she" throughout the RFC heading (ECF No. 10-1, PageID.65) and once again when stating that "the claimant testified that she could sit for twenty to thirty minutes . . . [,]" (*id*., PageID.66), even though it is well-documented that Plaintiff is a male and is referred to

considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id*., PageID.70-71.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 1, 2020, through the date of the decision. (*Id*., PageID.71-72.)

Plaintiff sought review of the hearing decision. (*Id*., PageID.274-275.) On February 27, 2025, the Appeals Council denied Plaintiff's request for review. (*Id*., PageID.43-48.) Thus, ALJ Fernandez's decision became the Commissioner's final decision. Plaintiff sought, and was granted, an extension of time within which to file a federal civil action. (*Id*., PageID.37-42.)

**B. Appeal & Pending Motions**

On April 28, 2025, AW filed the instant lawsuit under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner"), and the Commissioner has filed the administrative record (ECF No. 10-1). Currently before the Court is Plaintiff's October 20, 2025 motion for summary judgment (ECF No. 12), which presents three statements of error. (ECF

---

throughout the medical record by male pronouns. In light of what follows, this raises at least a question in the Undersigned's mind as to whether the ALJ was confused about which claimant's needs were being addressed here or how carefully the RFC was crafted.

No. 12, PageID.881-882, 889-905.) The Commissioner has filed a cross-motion for summary judgment (ECF No. 14), and Plaintiff has filed a reply (ECF No. 15).[3]

**C. Standard of Review**

"[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). "[A] decision supported by substantial evidence must stand, even if [the court] might decide the question differently based on the same evidence." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017). The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc.*

[3] Plaintiff's reply is 11.5 pages long (*see* ECF No. 15, PageID.924-935), which exceeds the length permitted by more than 50%. *See* E.D. Mich. LR 7.1(d)(3)(B) ("The text of a reply brief, including footnotes and signatures, may not exceed 7 pages."). Plaintiff's counsel is forewarned that future briefs exceeding the maximum number of pages permitted will be stricken and that the Undersigned is not eager to grant page-limit extensions when requested.

*Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### D. Analysis

#### 1. CTS

In his second statement of error, Plaintiff argues that ALJ Tobin's "RFC does not account for all of Plaintiff's severe physical impairments[,]" namely his CTS. (ECF No. 12, PageID.895-901.) By way of background, records dated March, April, and May 2022 acknowledge Plaintiff's CTS diagnosis. (*See* ECF No. 10-1, PageID.438, 517, 531, 539, 572, 576, 579, 582, 584, 725, 728, 731, 734, 736.)

##### a. The ALJ's May 20, 2024 decision

ALJ Tobin found at Step 2 that Plaintiff's severe impairments included CTS. (ECF No. 10-1, PageID.62.) Then, within the RFC discussion, the ALJ:

- Cited Plaintiff's function report, which reflected difficulty with, *inter alia*, reaching (*id.*, PageID.65-66, 354);

- Cited Plaintiff's hearing testimony that he "has significant issues reaching forward[,]" (*id.*, PageID.66, 90);

- Noted the CTS diagnosis (*id.*, PageID.67), citing, *inter alia*, Todd Britt, D.O.'s March 31, 2022 provider notes (*id.*, PageID.582) and Daniel A. Drake M.D.'s May 19, 2022 progress notes (*id.*, PageID.725), albeit without attribution;

- Referenced "normal medical findings" revealed at May 2021, September 2021, December 2021, March 2022, and April 2022

physical examinations (*id*., PageID.67 (*citing id*., PageID.418, 594, 591, 737, 729));

- Noted the September 2022 "normal EMG of the . . . upper extremities[,]" (*id*., PageID.67 (citing *id*., PageID.711); *see also id*., PageID.714, 722, 766);

- Acknowledged that, at the January 24, 2023 internal medicine examination, Harold Nims, D.O. noted that Plaintiff had "mildly limited shoulder motion" but was "able to reach overhead . . . ." (ECF No. 10-1, PageID.67, 850); and,

- Found "persuasive" Dr. Nims's opinion that Plaintiff was "at least mildly impaired" in his abilities to bend, stoop, lift, walk, crawl, squat, carry, and travel, as well as push and pull heavy objects (*see id*., PageID.850), explaining that these findings were "consistent with the generally normal medical findings from physical examinations" and "account[] for the mild limitations in range of motion" during Dr. Nims's examination (*id*., PageID.69).

Ultimately, ALJ Tobin stated: "While the limited findings related to the claimant's [CTS], including normal EMG of the upper extremities, do not support manipulative limitations, it has been accounted for in limiting the claimant to light work." (*Id*., PageID.69-70.)[4]

---

[4] Manipulative limitations include restrictions on reaching, handling, fingering, and feeling. *See, e.g.*, SSR 85-15, 1985 WL 56857, *7 (Jan. 1, 1985) ("*Reaching, handling, fingering, and feeling* require progressively finer usage of the upper extremities to perform work-related activities."); *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 471 (6th Cir. 2011) ("'No manipulative limitations' means [Plaintiff] is not limited in 1) reaching in all directions (including overhead), 2) handling, 3) fingering, and 4) feeling."); *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 427 (6th Cir. 2013) (". . . there were no manipulative limitations established, including reaching overhead, handling, fingering, and feeling.").

**b. Absence of manipulative limitations in the RFC**

Plaintiff contends that "[t]here are multiple errors in this single sentence." (ECF No. 12, PageID.897.) First, where ALJ Tobin noted "limited findings related to [his CTS]," (ECF No. 10-1, PageID.69), Plaintiff contends the reference to the "normal EMG of the upper extremities" does not "explain why the impairment was deemed 'severe' in the first place[,]" and he wonders "what evidence [ALJ Tobin] found compelling, or even what evidence she reviewed in reaching her decision." (ECF No. 12, PageID.897-898.) Second, where ALJ Tobin determined that "the limited findings" did not "support manipulative limitations," (ECF No. 10-1, PageID.69-70), Plaintiff wonders "what sort of limitations a severe case of CTS could support." (ECF No. 12, PageID.898.) *See Spoor Park v. Comm'r of Soc. Sec.*, No. 1:17-CV-01727, 2018 WL 3093624, at *19 (N.D. Ohio June 22, 2018) ("[I]t was not harmless error; this court and the claimant are forced to guess why the ALJ rejected [the evidence in question]—or whether she considered [it] at all. Even if the ALJ had a proper basis for rejecting [it]—and the court's own review of the record suggests she might have–ALJ decisions requiring reviewing court guesswork court cannot be affirmed."). (ECF No. 12, PageID.898; ECF No. 15, PageID.930.) Third, where ALJ Tobin stated that "it" – presumably Plaintiff's CTS – "has been accounted for in limiting the claimant to light work[,]" (ECF No. 10-1, PageID.70), Plaintiff points out that this is a classification of *exertional*

capabilities, *i.e.*, "sitting, standing, walking, lifting, carrying, pushing, and pulling[,]" 20 C.F.R. §§ 404.1569a(b), 416.969a(b), *i.e.*, not the *manipulative* limitations of *reaching and handling*. (ECF No. 12, PageID.898-899.)

**c. Manipulative requirements of jobs identified at Step 5**

Plaintiff takes issue with the absence of manipulative limitations – namely reaching and handling, but perhaps also fingering – when, at Step 5, ALJ Tobin determined that a person with Plaintiff's RFC was capable of performing the jobs of: (a) marker, which requires *frequent* reaching, handling, and fingering (DICOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016)); (b) classifier, which requires *frequent* reaching and handling and *occasional* fingering (DICOT 361.687-014, 1991 WL 672991 (Jan. 1, 2016)); and, (c) garment sorter, which requires *frequent* reaching and handling and *occasional* fingering (DICOT 222.687-014, 1991 WL 672131 (Jan. 1, 2016)). (*See* ECF No. 12, PageID.899-900; ECF No. 15, PageID.931-932.)[5]

Plaintiff contends "these tasks demand intricate movements that are not addressed by the limitation to light-exertion work." (ECF No. 15, PageID.932.) I agree: It is unclear to this subsequent reviewer on appeal how that is so. To the extent

[5] Plaintiff cites to the Occupational Information Network for its references to "wrist-finger speed," "finger dexterity," "control precision," and "manual dexterity[,]" (ECF No. 12, PageID.900 (citing https://occupationalinfo.org/onet/)), but the Undersigned cites the DOT, which is more typical in social security cases.

Plaintiff contends that "*severe* CTS must logically carry some degree of limitation in a claimant's capacity to reach and/or handle," (ECF No. 12, PageID.900 (emphasis in original)), or that the manipulative limitations typically attributable to CTS "are *not* sufficiently accounted for by a light-exertion RFC[,]" (ECF No. 15, PageID.931 (emphasis in original)), his points are well taken. Here, even if the reader accepts the ALJ's various references to "reaching," (*see* ECF No. 10-1, PageID.66-67), the ALJ's only mention of manipulative limitations – namely, "[w]hile the limited findings related to the claimant's [CTS], including normal EMG of the upper extremities, do not support manipulative limitations, it has been accounted for in limiting the claimant to light work[,]" (*id.*, PageID.70) – leaves this subsequent reviewer to wonder: (i) how the ALJ determined that Plaintiff, notwithstanding the CTS that the ALJ determined to be severe at Step 2 (and even recognizing the threshold nature of a Step 2 determination), was capable of unlimited reaching, handling, fingering, and feeling;[6] and, (ii) how Plaintiff's severe CTS impairment "has been accounted for in limiting the claimant to light work[,]" (ECF No. 10-1, PageID.70), since this is a classification of *exertional* capabilities, *i.e.*, not a *manipulative* limitation. As Plaintiff convincingly argues,

[6] While "never" – and for that matter, "unlimited" – are self-explanatory, "occasionally" means "from very little up to one-third of the time, depending on the particular job[,]" and "frequently" means "from one-third to two-thirds of the time." *See*, *e.g.*, SSR 83-14 ("The Medical-Vocational Rules As A Framework For Evaluating A Combination Of Exertional And Nonexertional Impairments").

"[r]eaching and handling [and perhaps also fingering] would logically be the most likely limitations faced by someone who suffers from severe CTS, as the ALJ found at step two . . . ." (ECF No. 12, PageID.899.) *See* 20 C.F.R. § 404.1520(c) (a severe impairment "significantly limits your physical or mental ability to do basic work activities . . . ."). Thus, the Undersigned agrees with Plaintiff that ALJ Tobin should have "further explain[ed] her decision to find no manipulative limitations were required, after having already determined that Plaintiff's CTS significantly limited his ability to perform basic work activities" (ECF No. 15, PageID.931), and should have further explained *how* the exertional limitations account for an impairment that can significantly impact manipulative activities.

Additionally, although Plaintiff states in his brief that he "makes no claim that any of these jobs would have necessarily been eliminated from the vocational expert's consideration if the RFC properly included a manipulative limitation[,]" (ECF No. 12, PageID.900), the Undersigned notes that, at the administrative hearing, when Plaintiff's counsel asked the VE about the effect of adding a limitation to only occasional reaching in all directions, the VE agreed that it would eliminate the jobs listed. (ECF No. 10-1, PageID.101-102.) Should the ALJ modify the RFC after revisiting it on remand, this testimony calls into question what effect any gross or fine manipulative restriction (to account for severe CTS)

would have on Plaintiff's ability to perform any of the listed jobs or other employment.

A court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Gross v. Com'r of Social Sec.*, 247 F. Supp.3d 824, 829 (E.D. Mich. 2017) (internal quotation and citation omitted). Notwithstanding the Commissioner's argument that Plaintiff "fails to identify the specific, additional limitations that should have been included . . . [,]" (ECF No. 14, PageID.919), Plaintiff has identified a deficiency in the ALJ's explanation that leaves the Court – and undoubtedly the Claimant – unable to spot and traverse the "logical bridge," and, thus, unable to trace the path of the ALJ's reasoning on an issue that could well affect the ultimate outcome. As such, Plaintiff is entitled to remand on this issue.

**2. Drug addiction or alcoholism (DAA) & mental health opinion evidence**

In his first and third statements of error, Plaintiff argues that ALJ Tobin: (a) "committed legal error when she failed to properly follow the regulations regarding evidence of Plaintiff's drug or alcohol abuse, as found in 20 C.F.R. §§ 404.1535 and 416.935[,]" (ECF No. 12, PageID.889-895); and, (b) "failed to properly evaluate the supportability and consistency of medical opinions [regarding his mental condition] when assessing their persuasiveness[,]" (*id.*, PageID.902-905).

(*See also* ECF No. 15, PageID.924-928, 932-935.) Correspondingly, the Commissioner argues that the ALJ "properly evaluated Plaintiff's [DAA][,]" and that the ALJ's opinion evidence evaluation "did not provide a basis for remand." (ECF No. 14, PageID.912-914, 920-921.)

However, based on the foregoing conclusion that Plaintiff is entitled to remand on his second statement of error, the Court need not address his first and third arguments.

**F. Conclusion**

Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF No. 14), and **REMAND** this matter to the Commissioner for action consistent with this decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 2, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE